Argued 21 March, decided 10 April, 1906.

## MARSDEN *v*. HARLOCKER.
## McPHERSON *v*. HARLOCKER.

85 Pac. 328.

ELECTIONS—REQUIREMENT OF NOTICE.

1. Electors are bound to take notice of elections regularly occurring in a prescribed manner according to law, and proclamations and other notices are not absolutely necessary; but in the cases of special elections at uncertain times or on particular subjects, all statutory provisions as to notice are mandatory, as, for instance, in reference to local option elections under Laws 1905, p. 41, c. 2.

INTOXICATING LIQUORS—WHO MUST ORDER ELECTION.

2. Under the provisions of Laws 1905, pp. 41, 50, c. 2, providing for the filing of a petition for an election as to the sale of intoxicating liquors, providing a method of determining whether the petition is signed by the requisite number of voters, and that the county court shall order an elec-

tion to be held if the petition is sufficient, it is imperative that the court determine the sufficiency of such petition, except the identity of the signatures, and order or refuse to order the election.

LOCAL OPTION—WHO CONSTITUTE COUNTY COURT—WHAT IS AN ORDER.

3. The "court" referred to in Laws 1905, p. 41, c. 2, § 1, conferring on a county court authority to order an election on the question of selling liquor in specified districts, is the body of persons designated by statute to sit in the capacity of a court, officially convened at a proper time and place ; so, a memorandum signed at their homes separately by the members of the court is not an "order," not being made by the court.

ELECTIONS NOT INVOLVING OFFICE—EQUITABLE JURISDICTION.

4. Equity courts have jurisdiction to determine the legality of an election not involving an office, where no method of contest is provided by statute: *McWhirter* v. *Brainard,* 5. Or. 426, doubted and distinguished.

From Coos: JAMES W. HAMILTON and LAWRENCE T. HARRIS, Judges.

Statement by MR. JUSTICE MOORE.

These two cases were argued and submitted together. That of *Marsden* v. *Harlocker* is a suit in equity instituted November 22, 1904, by Robert Marsden against L. Harlocker, as county judge of Coos County, and E. A. Anderson and Lloyd Spires, as county commissioners thereof, to restrain them from canvassing votes cast at, and from declaring the result of, an election held November 8, 1904, to determine whether the sale of intoxicating liquors as a beverage should be prohibited in that county, and to enjoin them from making an order prohibiting such sales. The complaint alleges, *inter alia,* that plaintiff is a citizen, taxpayer and qualified elector of Coos County and engaged therein in operating a brewery, having about $20,000 so invested; that on September 30, 1904, there was filed in the office of the county clerk of that county a pretended petition for an election to be held November 8th of that year, to determine whether the sale of intoxicating liquors should be prohibited in such county; that the county court thereof assembled in regular session at the courthouse therein, September 7, 1904, adjourning on the 12th of that month, and that at no time thereafter, prior to November 19, 1904, did such court again convene or make any order calling an election 'for the purpose specified; that by reason of the failure to give proper notice of the time and purpose of the proposed

election, the total vote cast thereat was 1,330 in favor of, and 1,220 against, prohibition, out of a total registration of 2,843, though for presidential electors at such election there were cast 2,840 votes; that the defendants, as such county court, are threatening to declare the result of the pretended election and to make an order prohibiting the sale of intoxicating liquors in Coos County, and, unless restrained from doing so, they will put their menace into execution, thereby destroying plaintiff's business, to his irreparable injury. A demurrer to the complaint, on the ground that it did not state facts sufficient to authorize the granting of the relief sought, having been sustained, and the plaintiff declining further to plead, the suit was dismissed and he appeals.

*McPherson* v. *Harlocker.* is a writ of review to have the decision and determination of the officers of Coos County in the matter of the election referred to reviewed, vacated and annulled. The writ was denied, and the petitioner appeals.

REVERSED.

For appellants there were briefs over the names of *Coke & Seabrook* and *J. M. Upton,* with oral arguments by *Mr. Upton* and *Mr. John S. Coke.*

For respondents there were briefs over the names of *George M. Brown,* District Attorney, and *Bronaugh & Bronaugh* and *George F. Martin,* with an oral argument by *Mr. Earl Clapp Bronaugh.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is contended by plaintiff's counsel that the failure of the county court of Coos County, as confessed by the demurrer, to order an election as prayed for in the petition therefor, rendered all the proceedings attempted to be had in pursuance thereof invalid, and, this being so, the court erred in not enjoining the defendants from invading the property rights of their client in attempting to put into execution such void proceedings. The record shows that though the county court of Coos County did not convene in regular or special session

within the time alleged in the complaint, the defendants, as members thereof, at different times and in various parts of the county, individually subscribed their names to a writing purporting to call an election to be held at the time and for the purpose specified in the petition, and this memorandum having been entered in the records of such court, it is maintained by defendants' counsel that the provisions of the local option act (Laws 1905, p. 41, c. 2) vest the county clerk of each county with judicial authority to determine the preliminary steps necessary to confer jurisdiction of the subject-matter, and that when he has exercised this power, the calling of an election in pursuance thereof by the county court is a mere ministerial duty, requiring neither discretion nor judgment, and such order may properly be made as in the case at bar, and therefore no error was committed as alleged.

The defendants' counsel, in support of the decree rendered herein, invoke the rule announced by a majority of the court in *People ex rel. v. Brenham,* 3 Cal. 477, where it was held that the time and place of an election having been prescribed by a city charter, the failure of the council to perform any duty required of them prior to an election should not defeat the choice of the electors when exercised in selecting officers for the municipality. We do not think the prevailing opinion in that case is founded in reason or supported by authority. The doctrine there promulgated has since been practically repudiated by the court making it. Thus, in *People v. Porter,* 6 Cal. 26, it was ruled that the proclamation of the Governor, required by statute, was necessary to the validity of a special election. In *People ex rel. v. Weller,* 11 Cal. 49 (70 Am. Dec. 754), it was decided that an election to fill a vacancy was invalid unless held under and in pursuance of the Governor's proclamation, which was mandatory and necessary to give notice to the electors that an election was to be held for such purpose. To the same effect are the cases of *People ex rel. v. Rosborough,* 14 Cal. 180, and *Kenfield v. Irwin,* 52 Cal. 164, in which latter case, Mr. Chief Justice WALLACE, speaking for the court, says: "The time of holding an election, whether general or

special, must be authoritatively designated in advance, either by law or by some means which the law has prescribed; otherwise the election is held without authority, and is ineffectual for any purpose."

1. In all general elections, the time, place and manner of holding which are prescribed by law, the rule is well settled that electors must take notice thereof, and as a corollary to this legal principle any requirement for the issuing of proclamations or the giving of other notice in respect to such elections must be treated as directory only: McCrary, Elections (4 ed.), § 185; *Stephens* v. *People ex rel.* 89 Ill. 337. In the case of special elections, however, all the statutory requirements as to proclamations or other means of giving notice are considered as mandatory and must be observed in order to render the vote of the electors participating therein valid: *People ex rel.* v. *Kerwin,* 10 Colo. App. 472 (51 Pac. 530) ; *Demaree* v. *Johnson,* 150 Ind. 419 (50 N. E. 370) ; *Morgan* v. *Gloucester City,* 44 N. J. Law, 137; *McHan* v. *Connell* (Tex. App.) 15 S. W. 284. Thus, in *State ex rel.* v. *Tucker,* 32 Mo. App. 620, it was ruled that an election under a local option liquor law, which could be held on the happening of certain conditions, was special, and that all the preliminary steps prescribed should have been taken in order to give validity to the election. To the same effect, in construing local option liquor acts, see *In re Sullivan,* 34 Misc. Rep. 598 (70 N. Y. Supp. 374) ; *In re Powers,* 34 Misc. Rep. 636 (70 N. Y. Supp. 590) ; *In re O'Hara,* 63 App. Div. 512 (71 N. Y. Supp. 613).

The reason for this rule rests upon the doctrine that suffrage is a valuable civil right, to the exercise of which each qualified person is entitled, and he must be given or charged with notice as to when, where and for what purpose he is to vote. If, by operation of law, the election invariably occurs at stated intervals, without any superinducing cause, except the efflux of time, the election is general, in which case all qualified persons are presumed to have knowledge thereof, and hence the failure of any officer or person upon whom the duty devolves to give a prescribed notice does not invalidate the votes cast thereat.

Where, however, some local project may be initiated by petition or other means, an election to determine whether such proposition shall be adopted is special, and the electors cannot be presumed to have knowledge of an application of the power which calls for the necessity of exercising the electoral franchise, in which instance a compliance with all the statutory requirements in respect to the performance of the conditions precedent is mandatory in order to validate the election.

The provisions of the local option act in this State (Laws 1905, p. 41, c. 2), so far as deemed involved herein, are as follows:

"Section 1. Whenever a petition therefor signed by not less than ten per cent of the registered voters of any county in the state * * shall be filed with the county clerk of such county in the manner in this act prescribed, the county court of such county shall order an election to be held at the time mentioned in such petition, * * to determine whether the sale of intoxicating liquors shall be prohibited in such county. * * In determining whether any such petition contains the requisite percentage of legal voters, said percentage shall be based on the total vote in such county * * for Justice of the Supreme Court at the last preceding general election; provided, that in no event shall more than five hundred petitioners, who are legal voters, be necessary upon any petition to require an election as herein provided.

Sec. 3. The petition therefor shall be filed with the county clerk not less than thirty nor more than ninety days before the day of election.

Sec. 6. The county clerk shall, upon receipt of such petition, immediately file the same and shall thereupon compare the signatures of the electors signing the same with their signatures on the registration books of the election then pending, or if nonpending then with the signatures on the registration books and blanks on file in his office for the preceding general election. If the requisite number of qualified electors shall have signed the petition, and if not inconsistent with the provisions of Sections 1, 12 and 14 of this act, he shall thereupon see that it is entered in full in the records of the county court as required by Section 1 of this act.

Sec. 12. If at any time an election hereunder shall result in prohibition for any subdivisions of county as a whole, or any precinct of said county, no election hereunder shall be held

within said prohibition territory except an election for the entire county before the first Monday in June of the second calendar year following, and not then unless petitioned therefor by the required number of legal voters and subject to the provisions in Section 14 of this act.

Sec. 14. When prohibition has been carried at an election held for the entire county, no election on the question of prohibition shall be thereafter held in any subdivision or precinct thereof until after prohibition has been defeated at a subsequent election for the same purpose, held for the entire county, in accordance with the provisions of this act."

2. It will appear from an examination of the excerpts quoted that the only duty specifically imposed on the county clerk of any county, so far as it relates to a prohibition petition, is to compare the names of the electors appended thereto with their signatures on the registration books or blanks, and if the application calls for an election for a subdivision of a county, he is required to see that the petition is entered in the records of the county court. Who is to determine whether or not the petition contains the requisite number of legal voters, and is otherwise sufficient, is not directly stated in the act under consideration. It would seem, however, that since the county court is required to order an election when a proper petition therefor has been filed, that, in the absence of any positive declaration on the subject, it must be incumbent upon such court to determine the preliminary questions involved as a condition precedent to making the order. As a petition is required to be filed not less than 30 nor more than 90 days prior to the day of election, ample time is thus given for making the application so as to secure an order at a regular session of the county court within the time prescribed.

We believe that a fair construction of the local option law, considered in its entirety, requires that after a county clerk has examined a petition for a prohibition election, compared the names subscribed thereto with the signatures of the qualified electors as they appear on the registration books or blanks, so as to identify the petitioners, it then becomes the duty of the county court to inspect such petition, and to examine its records to ascertain whether or not the application complies

with Sections 1, 12 and 14 of the act, and if the court concludes that these necessary requirements are fulfilled, it should order an election, which is tantamount to a proclamation authorizing the county clerk to issue notices thereof. As the right to vote upon the question of prohibiting the sale of intoxicating liquors is inaugurated by filing a petition, the election held in pursuance thereof is special, and hence the making of an order therefor by a county court, which in this particular respect at least requires an exercise of discretion and judgment, is mandatory and becomes a condition precedent to the holding of a valid election.

3. "A court," say the editors of the American and English Encyclopaedia of Law (Volume 8, 2 ed., p. 22), "may be defined as a body in the government, organized for the public administration of justice at the time and place prescribed by law." A court consists of persons officially assembled under authority of law at the appropriate time and place for the administration of justice: *Dunn* v. *State,* 2 Ark. 229 (35 Am. Dec. 54) ; *In re Allison,* 13 Colo. 525 (22 Pac. 820, 10 L. R. A. 790, 16 Am. St. Rep. 224) ; *Board of Commissioners* v. *Gwin,* 136 Ind. 562 (36 N. E. 237, 22 L. R. A. 402). Our statute observes the distinction usually recognized between a judge and a judicial tribunal, and provides that this officer may exercise out of court such powers only as are expressly conferred upon him: B. & C. Comp. § 933. The county court of Coos County did not meet in regular or special session, nor assemble at the time or place prescribed by law, and the memorandum signed by the defendants, purporting to authorize an election to determine whether the sale of intoxicating liquors as a beverage should be prohibited in that county, was not an order within the accepted meaning of that term. No election ever having been ordered, the votes cast in Coos County, November 8, 1904, upon the question attempted to be submitted, were nullities, and, such being the case, it remains to be seen whether a court of equity will grant the relief prayed for in the complaint.

4. The remaining question is one of remedy. The alleged threat of the defendants to canvass the vote cast, to announce

(48th Or.—7) .

the result thereof and to prohibit the sale of intoxicating liquors in Coos County is as though they were about to order prohibition in force therein without observing any of the formalities prescribed by law as a means to that end. The rule is quite general that equity will not intervene when an adequate remedy is afforded at law, and hence in controversies involving the right to an office an injunction will not usually lie, because the parties have a complete remedy by statute to contest an election or by *quo warranto* to determine the right resulting therefrom. Where, however, an election relates to the adoption or rejection of some local question and does not include an office, it has been held in some jurisdictions, in the absence of any statute authorizing such proceedings, that equity would intervene to determine a contested election because of the irregularities or fraud in the conduct thereof: 10 Am. & Eng. Enc. Law (2 ed.), 816; High, Injunctions (4 ed.), § 1250. Thus, in *State ex rel. v. Eggleston,* 34 Kan. 714 (10 Pac. 3), which was a suit to enjoin county commissioners from canvassing votes polled upon the proposition of the relocation of a county seat, it was held that the relief sought should have been granted. In deciding the case Mr. Chief Justice HORTON, speaking for the court, says: "Counsel for the county board rely with a great deal of confidence upon the cases of *Moore* v. *Hoisington,* 31 Ill. 243, and *Dickey* v. *Reed,* 78 Ill. 261, to establish the doctrine that the canvass of election returns cannot be interfered with by an injunction. Both of these cases were proceedings for contesting elections. This is not a proceeding to contest an election, but to restrain the canvass of a vote upon the ground that the petition presented to the county board for the election was wholly insufficient because of the fact that certain names were by the signers requested to be withdrawn, and that some of the names signed were signatures of nonresidents, or other unauthorized persons. The petition alleges, in substance, that no election ought to have been ordered upon the petition, and that no election could have been legally held upon the petition, under the provisions of the statute."

It is contended by defendants' counsel that in *McWhirter* v.

*Brainard,* 5 Or. 426, a different rule was adopted in this State. In that case it was held that an injunction would not lie to restrain the removal of county offices to a county seat that had been relocated pursuant to a majority of the votes cast at an election held for the purpose, SHATTUCK, J., saying: "We think the matters of fact, which counsel claim should have been tried, do not constitute a cause of suit in equity—do not present a case wherein relief can be had by injunction. There is no special statutory provision for contesting an election for location of county seat; but we think when the question, in such a case, is the qualification of the voter, the conduct of the judges or the legality of the canvass, the proper remedy is by mandamus and not by injunction in equity." In *Robinson* v. *Wingate,* 36 Tex. Civ. App. 65 (80 S. W. 1067), in a well-considered opinion, it was ruled by the Court of Civil Appeals of Texas that equity had no jurisdiction to prevent by injunction the publication of the result of a local option election, on the ground of its invalidity or unfairness in conducting it, even at the suit of liquor dealers on allegation of irreparable injury to their property in case publication was made. In the case last cited, Mr. Justice GILL, referring to the Texas statute, which permits any qualified elector to contest a local option election (Rev. St. Tex. 1895, § 3397; *Norman* v. *Thompson,* 96 Tex. 250, 72 S. W. 62), says: "We think it follows logically and inevitably that a suit to contest the result of local option elections must be brought under the statute, and that a suit of this nature addressed to the general jurisdiction of the district court cannot be heard." It will thus be seen that the Texas court, observing the rule which prevails in all jurisdictions, denied injunctive relief, because the party alleging fear of injury from a proclamation of the result of a majority vote in favor of local option had an adequate remedy by statute for contesting the election. In *McWhirter* v. *Brainard,* 5 Or. 426, an injunction was denied because there was no special statutory provision for contesting an election for location of a county seat. We do not think the doctrine announced in that case can be predicated upon the reasons assigned, or that it is con-

trolling in the case at bar, no election contest being permissible except in case of persons claiming an office: B. & C. Comp. § 2839 *et seq.* It would seem, therefore, that equity has jurisdiction to afford the relief prayed for in the Marsden Case; but, however that may be, the same questions are presented in the review proceeding instituted by McPherson, and in any event are properly before the court for determination.

In view of the fact that the county court did not, as required by law, order the election in question, such election was invalid, and the judgment and decree of the court below are respectively reversed.                          REVERSED.